UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID SEFTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:06-cv-03484 |
| | § | |
| EYEBLASTER, INC., and | § | |
| JOHN DOES 1-10, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT'S RESPONSE IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SANCTIONS, ETC.

Defendant Eyeblaster, Inc. ("EI") hereby opposes "Plaintiff's Motion
for Sanctions for Willful Disregard of the Magistrate's Order and Second Motion
to Compel Answers to Request for Production No. 28 and Related Discovery"
("Plaintiff's Motion"), on the following grounds.

<u>Introduction</u>

Plaintiff's incomplete and misleading recitation of facts fails to
acknowledge the following key facts:[1]

---

[1] A complete timeline of the litigation events that lead up to the present impasse is included as Exhibit A to
this response.

Plaintiff did indeed launch discovery "as part of [his] original suit." Plaintiff's Motion, p. 1.  However, he fails to note that this was upon the filing of his suit in Texas state court, on October 12, 2006 (not on "10/1/06," as his motion states) and that his "original" discovery consisted of 125 requests for admission, 13 interrogatories and 49 document requests -- 187 items in total.  All of this discovery was rendered inoperative by virtue of EI's removal of the case to this U.S. District Court on November 3, 2006, and the federal rule that forbids initiation of discovery until the parties have held a mandatory conference. F.R.Civ. P. 26(d) and (f).

Thus, it was not until January 30, 2007, that plaintiff served his first viable set of written discovery requests.  This set shrank the number of requests for admission down to 99 and the interrogatories down to 7 but bumped the document requests up to 58 -- 174 items in total.  Many of the discovery requests sought documents and information on issues unrelated to the present matter including the lease agreement defendant's Houston office, contracts with unrelated clients, the businesses of unrelated clients, risk management and reserve memoranda, and securities filings.  Plus, plaintiff the next day noticed oral depositions of EI witnesses for February 9, 2007, and demanded the right to "re-take" depositions of the same witnesses *after* EI had responded to plaintiff's written discovery.  Faced

with this unorthodox and unnecessary way of proceeding, EI brought a well-considered motion for a protective order on February 8, 2007.

      EI has diligently acted to work through the good faith disputes that defendant has had with plaintiff's requests.  The parties have met and conferred regarding these discovery requests on March 15, 2007, March 28, 2007, July 25, 2007, and August 20, 2007.  These meetings were collegial, professional, and productive.  A hearing was held on April 4, 2007 regarding these disputes.  The Court Orders on April 10, 2007 and April 18, 2007 sustained many of EI's objections to the discovery requests and ordered responses on others.  EI revised and served its discovery responses on April 24, 2007.  EI further provided plaintiff with a CD containing two hundred forty-six files that take up over eleven megabytes of information on May 8, 2007.  After approval from AOL's counsel, EI provided a redacted copy of its contract with AOL on July 24, 2007.  These proceedings, productions, face-to-face meetings, and other communications have reduced the current dispute to only seven of the plaintiff's original one hundred and sixty-seven requests and interrogatories.

      While this motion pended, EI answered such few pieces of plaintiff's written discovery as were not objectionable and objected to the rest, on March 5, 2007.  This was a full set of answers and objections to all 174 of plaintiff's "first set" of items.  Finally, after opposition briefing, the Court ordered a hearing on

EI's motion for protective order to be held on March 23, 2007.  As co-counsel for

EI was about to board a plane for Houston on March 22nd, plaintiff filed a last-

minute, in effect, cross-motion to compel answers to his discovery, *without* holding

the mandatory "meet and confer" session beforehand.  Consequently, that same

day the Court put over the hearing until April 4, 2006, and directed the parties to

hold the required pre-hearing discussions.  This time, plaintiff's counsel complied

with the Court's ruling.  As the result of a lengthy bargaining session, the number

of plaintiff's discovery requests in dispute were shrunk from a then total of 164 to

71.  As a result of the Court's hearing held on April 4th, this number was shrunk

still further (and many of the remaining requests dramatically narrowed in scope)

to 61.  See the Court's Order of April 10, 2007.

        EI has since responded substantively to all 61 of the Court-defined

items of plaintiff's discovery.  The instant Plaintiff's Motion thus raises only

6 issues that he believes remain in dispute.  As will be demonstrated herein,

plaintiff has the worse part of the argument on all six questions, but more pertinent

for the moment is that nothing plaintiff has asserted makes out even the semblance

of a "long running continuing pattern of discovery abuse" on the part of EI;

Plaintiff's Motion, p. 1, nor any violations of Court Orders by EI, nor any grounds

whatsoever for the imposition of costs or sanctions against EI.  The details are

addressed next.

<u>Argument</u>

I.    EI has Responded in Time and in Substance to Plaintiff's Document
      Request No. 28; Plaintiff's Destruction of Critical Evidence Renders
      <u>Further Production Essentially Futile</u>

EI has timely and appropriately responded to *all* of plaintiff's, significantly narrowed discovery requests that the Court allowed in its Order of April 10, 2007.  In that Order, the Court requested a witness affidavit concerning Request No. 28 from defendant, and upon consideration of EI's submission and one from plaintiff, the Court overruled EI's objections to the request and ordered a supplemental response, recognizing EI's right to protect its legitimate trade secrets.

In Request No. 28, plaintiff requested, "A digital (on CD) and hard copy of the software, html code, or other program running at the url 152.163.208.185, associated with the url, or that directs user computers to this url, or that tried to contact the url."  In its Order relating to Request No. 28, this Court clarified that the request refers to software running at the website <u>aol.system-sys.com</u>.

EI has acted in good faith to comply with the Order.  EI provided the code for sample cookies that would emanate from aol.system-sys.com on April 24, 2007.  EI also collected and produced on May 8, 2007, a CD with 246 files that take up 11.6 megabytes of memory that included java script files, linking code, and programmer's comments responsive to Request No. 28.

Dissatisfied with the production, plaintiff has taken the position that its Request for Production number 28 should be read broadly.  In order to eliminate any possible doubt about EI's compliance with the Court's order, EI is prepared to produce to plaintiff all of its code utilized in the software that represents the heart of its advertising business in a manner that will protect the highly confidential nature of that information but address any legitimate needs of plaintiff in this case.

Specifically, EI is producing the entire *corpus* of its source code -- literally the company's "crown jewels" -- that is used to run all of EI's advertising services.  In order to insure protection of EI's confidential trade secrets, as contemplated by this Court's order, the code is being produced as strictly "Confidential," under the prevailing Agreed Protective Order in this matter, and under certain other physical security constraints.  See Defendant's Supplemental Response to Plaintiff's Document Request No. 28, a copy of which is attached hereto as Exhibit B.

EI notes that, contrary to the demands of plaintiff, there has been no way to set up a mechanism for plaintiff to run the programs so as to emulate the moment of July 14, 2006, when plaintiff claims his personal computer was afflicted.  First, the Internet, which is the main pathway for the operation of EI's software, is changing constantly, moment to moment.  Second, the particular advertisements that AOL was publishing at that time are known only to AOL – EI

is only the "delivery service" for any publisher's ads.  Third – and this is a critical point – plaintiff has destroyed all trace of evidence of what was "on" his computer that July day, by "detoxifying" it and then continuing to use it systematically -- if his papers are to be believed -- for all of his business and personal affairs, ranging from his "photography" traffic, to his tax consultancy, to his communications with his attorney about this very litigation.  <u>See</u>, <u>e.g.</u>, Plaintiff's Second Amended Complaint, ¶¶ 69 ("used . . . by Plaintiff extensively in [his] business. . . .), 102 ("ran . . . anti spyware software. . . .  Sefton purged [the offending] files from his computer. . . .").  There is no way that EI can possibly recreate even a simulation of the computer environment in which plaintiff erroneously asserts that EI's conduct of its lawful advertising services business somehow caused his particular PC to "crash," and no one else's.

Nevertheless, in order to resolve any possible issues concerning the sufficiency of EI's response to Request No. 28, EI will produce its whole source code, with the protections described in Exhibit B.  Plaintiff is entitled to no greater relief, particularly when he, himself, has destroyed the primary evidence in his case, namely, the contents of his PC's hard drive, after the event in question.

The limitations imposed upon EI by the "real world" of the Internet and by plaintiff's obliteration of the contemporaneous evidence once found on his

computer, have been verified by defendant's expert witness.  <u>See</u> Declaration of Defendant's Expert Witness, Arnold G. Reinhold, attached hereto as Exhibit C.

     II.    Plaintiff's Asserted Failures of EI to Comply with his Other <u>Discovery Requests are Likewise Unavailing</u>

     EI did not, as Sefton asserts, "unnecessarily [make its] answer[s] to [plaintiff's DR#'s] 42 and 44 dependent on the court's ruling" regarding DR# 28. Plaintiff's Motion, p. 3.  In fact, DR# 42, which plaintiff has admitted is not a document request at all but rather is an interrogatory, was answered substantively by EI, albeit under reservation of EI's objection that the information sought is overly broad and oppressive.  <u>See</u> EI's response to DR# 42 in the attached Exhibits A and B.  Likewise, EI also substantively answered DR# 44, referencing the pertinent documents that EI had produced to plaintiff back on May 8, 2007. <u>See</u> <u>id</u>.

     With regard to DR# 3, although plaintiff may be unhappy with EI's response to this request, the answer that there are "no such documents . . . other than previously produced" is substantive, responsive and true.  <u>See</u> <u>id</u>.

     With regard to DR#'s 20 and 21, plaintiff is mistaken.  Both were denied by the Court's Order of April 10, 2007.  Neither item was addressed expressly, which caused them to be eliminated via the catch-all ruling, "[a]ll other requested relief is denied."

With regard to DR# 47, plaintiff overlooks the Court's delimitation of this request in its Order of April 10, 2007.  The request originally asked for "all emails" over "the last 24 months."  The Court directed instead the more reasonable, "limited to communications relating to the 'pseudonymous question posed' to defendant."  Id.  So again, plaintiff may be unhappy that whatever documents fit this description, as delimited, EI already produced on April 24, 2007, but they were all there is.

III.   Pertinent Legal Authorities

Plaintiff's request for such severe and drastic sanction as precluding defendant's ability to "support a claim, defense or introduce evidence…" is wholly unwarranted.  Contrary to the present situation, preclusion is appropriate only where counsel "deliberately and consistently violates discovery orders." United States v. Alexander, 869 F.2d 808, 812 (5th Cir. 1989).  The courts look to the question, "[w]as the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed? … [D]istrict courts must demonstrate that sanctions are not vindictive or overly harsh reactions to objectionable conduct…." Topalian v. Ehrman, 3 F.3d 931, 937 (5th Cir. 1993).

EI has acted in utter good faith while attempting to respond to this plaintiff's barrage of unregulated discovery requests and the two court orders narrowing and redefining those requests.  As the Fifth Circuit has said, "the

sanction should be tailored to fit the particular wrong, <u>Thomas v. Capital Security Services</u>, 836 F.2d 866, 877 (5th Cir. 1998) (en banc), and in this case, there is no nexus between the sanctions that plaintiff seeks and any purported harm resulting from EI's conduct in discovery.  To the contrary, the sanctions that plaintiff seeks are nothing more than an effort to overcome his inability to supply the proof that his claims demand resulting from his destruction of the key evidence in this case.

Where a knowledgeable party, like David Sefton, who "knew or should have known the evidence was relevant," destroys that evidence to the substantial and irremediable prejudice of his opponent, sanctions against the plaintiff are appropriate, not against the defendant.  <u>See</u> <u>Duque v. Werner Enters., Inc.</u>, No. L-05-183, 2007 WL 998156, at *2 (S.D.Tex. Mar. 30, 2007).  <u>See also</u>, <u>Kucala Enters., Ltd. v. Auto Wax Co.</u>, No. 02 c 1403, 2003 WL 21230605 at *5,*8 (N.D. Ill. May 27, 2003) (dismissal of case appropriate where plaintiff's use of "Evidence Eliminator" on own computer thwarted discovery and caused "severe prejudice" to defendant).

<u>Conclusion</u>

For all the foregoing reasons, plaintiff's motion should be denied.  A form of order to this effect is included herewith.

Respectfully submitted,

  /s/     Walter R. Mayer
Guy Stanford Lipe
Walter R. Mayer
VINSON & ELKINS LLP
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX  77002-6760
Tel:  (713) 758-1109
Fax:  (713) 615-5607

and

Joseph J. Serritella
   Admitted *pro hac vice*
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Tel:  (215) 981-4097
Fax:  (215) 981-4750

Attorneys for Defendant
EYEBLASTER, INC.

OF COUNSEL:

Christopher D. Olszyk, Jr.
PEPPER HAMILTON LLP
Philadelphia, PA  19103-2799

Dated:  August 23, 2007

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing and within document was served on the 23rd of August, 2007, by the United States District Court's ECF system, or by United States First-Class Mail, postage-prepaid, on the following attorney for the plaintiff:

> Dan Krocker, Esquire
> 710 North Post Oak Road, Suite 400
> Houston, TX  77024-3812
> *DanKrocker55@aol.com*

> /s/   Walter R. Mayer
> Walter R. Mayer